# Middleton *v.* Rice.

[FEBRUARY, 1845.]

Though a limitation to a widow so long as she remains unmarried, is good, yet if a legacy or bequest of personal property be given to a party for life, with a condition subsequent annexed thereto, that if the legatee marries, the legacy is to go over; it seems such condition is bad.

Where a testator directed his executors to pay annually two hundred dollars of the proceeds of his real estate to his widow, for the support of herself and his children, to be paid monthly, until his youngest son should arrive at the age of twenty-one, provided, however, that his wife remained his widow that long, and in case she again married, the bequest to cease from the day of her marriage; *held*, that the bequest over was void.

THIS was a case stated to try the legal effect of the following clause in the last will of Daniel Rice, of Delaware county:—"Item, I give and bequeath to my loving wife Deborah, all my household and kitchen furniture, together with all the grain, flour, meat and vegetables, in and about the house at the time of my decease, absolutely, and to be at her own disposal; and I do order and direct my said executors to put out my real estate to the shares as hereinafter directed, and out of the proceeds of the same, yearly and every year, to pay to my said wife, for the support of herself and children, two hundred dollars, and that to be paid in monthly payments. And the remainder of the said proceeds to be laid out annually in fencing, lime and manure, if necessary for the place, until my son Daniel arrives at full age, provided, however, that my said wife remains my widow that long. And in case she again marries, the above bequest of two hundred dollars annually is to cease from the day of her said marriage."

*Dunlap* and *Meredith*, for plaintiffs.
*Dillingham*, for defendants.

[Middleton *v.* Rice.]

The opinion of the court was delivered by

KENNEDY, J.—Contracts in restraint of marriage are regarded as being contrary not only to the law and order of our nature, but likewise contrary to sound policy, and therefore ought to be considered illegal and void. Marriage, no doubt, may be made the subject of regulation by qualified restrictions under certain circumstances, but under no circumstances whatever ought a general and entire restriction of it to be countenanced and sanctioned by law. Accordingly, a covenant not to marry any person but the covenantee, under a penalty of one thousand pounds, without any consideration to support it, was held invalid in law, and that no action would lie to recover the penalty, *Lowe v. Peers*, 4 Burr. 2225. The judgment of the king's bench in this case was afterwards affirmed upon writ of error in the exchequer chamber. Lord Chief Justice WILMOT, in delivering the opinion of the court, observed:—"It would be endless to enumerate the duties which are the objects of moral obligations, both in a state of society and out of it; gratitude, charity and all parental and filial duties beyond mere maintenance. Friendship, beneficence in all its branches, and many more which might be named, are duties of perpetual obligation, and I cannot name a greater than matrimony, being one of the first commands given by God to mankind after the creation, repeated again after the deluge, and ever since echoed by the voice of nature to all mankind. For the precept of multiplication has been always expounded by the civilized world to mean multiplication by the medium of matrimony, and not promiscuous copulation; and there cannot be a duty of greater importance to society, because it not only strengthens, preserves and perpetuates it, but the peace, order and decency of society depend upon protecting and encouraging it." See *Wilmot's Opinions and Judgments*, 371. He also proceeds further to state that "the writers upon the law of nations consider contracts to omit such duties as void; nay, they

G

[Middleton v. Rice.]

consider an oath to perform them as not obligatory. *Grotius, lib.* 2, *ch.* 13, § 67. A covenant of this kind does not only hinder a greater moral and social good, it does not only interfere and check that '*profectum in bono*' which we owe to God and our country, but it tends to evil, and to the promotion of licentiousness, it tends to depopulation, the greatest of all political sins; it is a contract '*vergens ad publicam perniciem,*' and therefore has a moral turpitude in it." And he also shows that it is much worse than a covenant of perpetual chastity, which extends to all unlawful as well as lawful intercourse, because a covenant in restraint of marriage only interdicts the innocent gratification of a natural appetite, and leaves the party at full liberty to a criminal indulgence of it. Therefore to entertain an action for the breach of such contracts, would be setting the laws of God and man at variance with one another, and would be making the common law counteract its own favourite dominant principle "*salus populi suprema lex.*" In *Baker* v. *White*, 2 Vern. 215, a bond from a widow not to marry again, was decreed to be delivered up, though there was a counter bond to pay a sum of money to her executors if she did not. Vide also, *Key* v. *Bradshaw*, Id. 102. "Conditions also, in restraint of marriage, are odious; and are therefore held to the utmost rigour and strictness. They are contrary to sound policy. By the Roman law, they are all void," says Lord Mansfield, in *Long* v. *Dennis*, 4 Burr. 2055. "Conditions precedent," he further observes, "must previously exist," (meaning that they must be performed, otherwise the gift cannot take effect.) "Therefore in these, there can be no liberality except in the construction of the clauses. But in cases of conditions subsequent, it has been established by precedents that where the estate is not given over they shall be considered as only *in terrorem.*" *Fry* v. *Porter*, 1 Chan. Ca. 138; 1 Mod. 86, 300; 2 Chan. Rep. 26; *Pullen* v. *Ready*, 2 Atk. 587; *Harvey* v. *Aston*, 1 Atk. 361; *Scott* v. *Tyler*, 2 Bro.

[ *Middleton v. Rice.* ]

Ch. Rep. 431. " This shows how odious such conditions
are, for, in reason and argument, the distinction between
being or not being limited over is very nice; and a clause
can carry little terror which is adjudged to be of no effect."
We must however be careful not to confound limitations
with conditions, for limitations may be good notwithstand-
ing they are seemingly in restraint of marriage, and were
so by the civil as well as the common law. As, for in-
stance, where the meaning of the testator is not to forbid
marriage, but to grant the use of the thing bequeathed until
the legatee shall marry; *Swinburne, part* 4, *ch.* 12, § 6;
or where the prohibition of marriage is not made condi-
tionally by this word *if*, (as, I make thee my executor, if
thou dost not marry,) but by other words or adverbs of
time; as, when the testator willeth that his daughter or
wife shall be executrix or have the use of his goods, so long
as she shall remain unmarried. Agreeable thereunto are
the laws of this realm of England, wherein there is a case
that one of the kings of this realm did grant to his sister
the manor of D. so long as she should continue unmarried,
and this was admitted to be a good limitation in the law,
but not a condition. *Swinburne, part* 4, *ch.* 12, § 19. But
where a legacy is given on marriage, with consent merely,
and there are no words to vest the legacy, the consent
is a condition precedent, so that nothing becomes due until
marriage, for by the civil law as well as by the common
law, if money be given to be paid at a time or upon an
act previous to the payment, nothing becomes due or can
be demanded, till the time incurred or the act performed.
*Harvey* v. *Aston*, Com. Rep. 744.

Although in cases of conditions subsequent, it seems to
be established, that where there is a bequest over upon non-
compliance with a condition requiring consent to marriage,
the executory bequest will take effect upon a breach of the
condition by the primary legatee, so that it shall not be con-
sidered *in terrorem*, yet I apprehend, in no case has it been

[Middleton v. Rice.]

held, that if a legacy or bequest of personal property be given to a party either absolutely or expressly for life, with a condition subsequent annexed thereto, if the legatee marries, the legacy or bequest shall be given to a third person, such shall be good or available to the third person, because the condition being an absolute prohibition of marriage upon any terms whatever, must be considered as wholly void and of no effect. Accordingly, Ch. Baron COMYN, in *Harvey* v. *Aston*, Comyn's Rep. 729, in speaking of what he seems to think uncontroverted on both sides, says, "If a portion be given on the consideration that the daughter should never marry, I think such a condition should be rejected as repugnant to the original law of the creation of mankind." See also, *Godolph. Orph. Leg. part* 2, *ch.* 17, § 6. And of this opinion was Lord Chief Justice WILLES, when it cannot be construed into a limitation. Willes' Rep. 94. Also in *Salisbury* v. *Bennet*, Skinner's Rep. 286, where it is said by RAWLINSON, Justice, conditions wholly to restrain marriage are odious, as that a woman shall not marry, or shall not marry before sixty, and therefore (as in the civil law) are void. Indeed, I am not aware of even a dictum to the contrary, by an English judge or chancellor, except that of Lord THURLOW in *Scott* v. *Tyler*, 2 Bro. Ch. Ca. 488, where he is reported to have said, that a condition that a widow shall not marry is not unlawful. He must, I presume, have taken this idea from the civil, or rather the canon law, which, it is said, made conditions against marriage void as to virgins, but allowed them as to widows, especially if the legacy was given by a husband to his own wife. *Godolph. Orph. Leg. part* 3, *ch.* 17, § 9. Such a distinction may have existed at Rome, and have proceeded from a selfish pride or ungenerous prejudice on the part of husbands or ecclesiastics, who were most likely the lawgivers there. To the credit, however, of English lawgivers, I think it may be said, that it never entered into their minds to make any distinction of this sort. For certainly it does

not appear to be sustained by any principle of nature or sound policy. Why should a widow of twenty-two be restrained from marrying more than if she had never been married? This dictum of Lord THURLOW seems to be impugned by the decision of the supreme court of Massachusetts, in *Parsons* v. *Winslow*, 6 Mass. Rep. 178, and particularly by what fell from Justice SEDGWICK, in delivering the opinion of the court, who says—"The real intention of the bequest was for the life of the wife, on condition of being void in the event of her marrying. Had this been a condition precedent, it would have defeated the gift; but when the condition is subsequent, as this is, and the legacy is not given over, it is considered merely *in terrorem*, and the condition is void, because it puts a restraint upon matrimony, which ought not to be discouraged." It is true that Mr. Justice STORY repeats the dictum of Lord THURLOW in his 1 *Equity Jurisprudence*, § 285, without comment, but it is manifestly repugnant to all that he has recognised and laid down as the law in that valuable work of his. In § 280, he says—"If the condition is in restraint of marriage, then, indeed, as a condition against public policy, and the due economy and morality of domestic life, it will be held utterly void. And so if the condition is not in restraint of marriage generally, but still the prohibition is of so rigid a nature, or so tied up to peculiar circumstances, that the party upon whom it is to operate is unreasonably restrained in the choice of marriage, it will fall under the like consideration. Thus, where a legacy was given to a daughter, on condition that she should not marry without consent, or should not marry a man who was not seized of an estate in fee simple of the clear yearly value of £500, it was held to be a void condition, as leading to the probable prohibition of marriage, *Kelly* v. *Monck*, 3 Ridgw. Parliam. Cases, 205, 244, 247, 261." I cannot refer to any case, embracing a devise of real estate upon a condition subsequent in restraint of marriage generally, in

which the condition has been adjudged to be void, but such
would seem to be, I think I may say, the universal opinion
entertained by judicial men on this point. In *Perrin* v.
*Lyon*, 9 East 170, which was a devise of real estate, subject
to a condition of a partial restraint of marriage, it may be
fairly inferred, if the restriction had been general, that Lord
ELLENBOROUGH would have held the condition void. Ac-
cordingly Mr. Jarman, in his edition of Powell on Devises,
2 vol. 291, observes; that "even in regard to real estate it
seems to be generally admitted, (though the point rests
rather on principle than decision) that unqualified restric-
tions on marriage are void on grounds of public policy."
In the case under consideration the testator has directed
his executors to pay annually two hundred dollars of the
proceeds of his real estate to his widow for the support of
herself and her children, to be paid monthly, until his son
Daniel shall attain the age of twenty-one years; provided,
however, that his wife remains his widow that long, and in
case she marries again, the bequest of two hundred dollars
annually is to cease from the day of her marriage. Had
the testator directed the two hundred dollars annually to be
paid to his wife as long as she remained a widow, such
limitation, according to the authorities referred to above,
would have been good, and her subsequent marriage would
have terminated her right to receive any longer the annuity.
But this is not the form of the gift; it is given to her, not
during her widowhood, but expressly until the testator's son
Daniel shall arrive at full age, provided, however, that his
said wife remains his widow that long, and in case she again
marries, the above bequest of two hundred dollars annually,
is to cease from the day of her said marriage. Thus the
restriction upon the wife's marriage generally, is superadded
as a condition subsequent to the previous limitation, that
the annuity should be continued to be paid to her by the
testator's executors until his son Daniel should arrive at
full age. It being then both in form and substance a con-

[ Middleton *v.* Rice. ]

dition subsequent and not a limitation of the devise, it must be considered as void according to the principles set forth in the premises, as being contrary to the first law of our nature, and to an institution pre-eminently calculated to promote the very best interests as well as the true happiness of mankind in the very highest possible degree. The plaintiffs are therefore still entitled to demand and receive the annuity of two hundred dollars, monthly, until Daniel the eldest son of the testator shall arrive at full age, if he should live so long, and judgment is directed to be entered for the amount of principal and interest due and in arrear according to the case stated.*

* The question discussed by the learned judge in the foregoing able opinion, has been since elaborately argued before the supreme court in *banc,* and the law is now settled in Pennsylvania, that on a devise of *real* estate to the testator's widow for life, a condition thereto annexed, *that she remain his widow,* is valid; and on a second marriage her estate in the land is divested. *Com.* v. *Stauffer,* 10 Barr 350; *Bennett* v. *Robinson,* 10 Watts 348. But a condition in restraint of marriage annexed to a bequest of *personal* estate, is void. *Hooper* v. *Dundas,* 10 Barr 75; *M'Ilvaine* v. *Gethen,* 3 Wh. 575.